UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| GASPAR PHYSICAL THERAPY, INC., a California corporation, and BRIAN STONE, an individual, <br><br> Plaintiffs, <br><br> v. <br><br> DAVID W. "DAVE" ROBERTS, an individual, RE-ELECT SUPERVISOR DAVE ROBERTS 2016, and DOES 1-20, inclusive, <br><br> Defendants. | Case No.:  17cv2051-WQH-JLB <br><br> **ORDER** |

HAYES, Judge:

The matter before the Court is Defendant David W. "Dave" Roberts' Motion to Strike All Causes of Action Pursuant to California Code of Civil Procedure section 425.16 (the "Anti-SLAPP Motion").  (ECF No. 6).

## BACKGROUND

On September 6, 2017, Plaintiffs filed a complaint alleging defamation, intentional infliction of emotional distress, and negligence in the Superior Court for the State of California, San Diego County, against Defendants Dave Roberts and Re-Elect Supervisor

1

Dave Roberts 2016.[1]  (ECF No. 1-2).  On October 5, 2017, the case was removed to this Court.  (ECF No. 1).  On November 13, 2017, Defendant moved to strike all causes of action under California Code of Civil Procedure section 425.16 (anti-SLAPP Statute).[2]  (ECF No. 6).  On November 22, 2017, Plaintiffs responded to Defendant's Anti-SLAPP Motion and moved to stay and conduct discovery.  (ECF No. 12).  On February 9, 2018, the Court granted Plaintiffs' motion for a stay (ECF No. 27), and ordered discovery.  On August 20, 2018, Plaintiffs filed an Additional Response to Defendant's Anti-SLAPP Motion.  (ECF No. 70).  On September 5, 2018, Defendant filed a Reply.  (ECF No. 75).

## FACTS

In October 2016, Kristin Gaspar and Defendant David W. "Dave" Roberts were campaigning for the District Three seat on the San Diego County Board of Supervisors.  In the closing days of the political season, Defendant Roberts, the incumbent, distributed two[3] double-sided printed campaign advertisements ("the mailers") to approximately fifty to fifty-five thousand households in the San Diego area.  (ECF No. 75 at 12).

On or about October 14, 2016,[4] the first mailer was distributed.  (ECF No. 75 at 12).  The mailer contained two statements alleged by Plaintiffs in this action to be defamatory.  The front side of the October 14 mailer stated:

---

[1] Defendant Re-Elect Supervisor Dave Roberts 2016 was a registered 401fundraising arm of Defendant David W. Roberts before and during the 2016 election.  Defendant Roberts states that it was terminated and ceased to exist after May 12, 2017.  (ECF No. 1 at 2).  For the purposes of this Order, the term "defendant" refers to Defendant David W. Roberts.

[2] SLAPP is an acronym for "Strategic Lawsuit Against Public Participation." *Mindys Cosmetics, Inc. v. Dakar*, 611 F.3d 590, 595 (9th Cir. 2010).

[3] Plaintiffs also reference an additional mailer sent by the San Diego County Democratic Committee on or around October 20, 2016.  (ECF No. 1-2 at 9).  The San Diego County Democratic Committee is not a party to this action.  The Court does not examine the Democratic Committee mailer.

[4] The Complaint states that the first mailer was published on October 18, 2016, and the second on October 28, 2016.  (ECF No. 1-2 at 5, 11). The dates used in this Order refer to the dates Defendant has indicated that the two mailers first entered the postal system.  (ECF No. 75 at 12).

1. "KRISTIN GASPAR'S COMPANY SETTLED A LAWSUIT COMPENSATING VICTIMS WHO SUED FOR MALPRACTICE AND ELDER ABUSE."

(ECF No. 1-3 at 2).

2. "Kristin Gaspar has a long history of shady business practices . . . [she] operates a medical business known for malpractice, elder abuse, and negligence".

*Id.* Each of the statements ends with a footnote directing the reader to "CHECK THE FACTS," next to a corresponding reference to "Case No. GIN054845, San Diego County Superior Court, Filed 8/18/06." *Id.* The back of the October 14 mailer stated:

3. "Kristin Gaspar's company broke her patient's trust."

*Id.* at 3. The words on the back of the October 14 mailer are superimposed over images of a courthouse and the caption page of the complaint in California Superior Court, County of San Diego Case No. GIN054845 (hereafter "Case No. GIN054845"). *Id.* The image of the complaint in Case No. GIN054845 contains a caption with six causes of action: "Negligence, [m]edical [m]alpractice, [e]lder abuse/neglect, [p]remises [l]iability, [l]oss of [c]onsortium, [n]egligent [h]iring, [s]upervision, [t]raining." *Id.* The pictured complaint lists "Gaspar Physical Therapy, Physical Therapist Brian Stone, LA Fitness Centers, Does 1-50" as defendants. *Id.* The names of the plaintiffs and the names of the attorneys are redacted in the image. *Id.*

On or about October 17, 2016, a second mailer was distributed by Defendant. (ECF No. 75 at 12). The front of the October 17 mailer stated "KRISTIN GASPAR'S PRESCRIPTION for San Diego Seniors," superimposed over an image of the caption page in Case No. GIN054845. (ECF No. 17-1 at 3). The back of the October 17 mailer contained substantially the same statements as the front of the October 14 mailer. *Id.* at 2.

In Case No. GIN054845, Gaspar Physical Therapy, a business owned by Kristin Gaspar and her husband Paul Gaspar (ECF Nos. 6-11 at 3; 70-22 at 2), and Brian Stone, a physical therapist who works at Gaspar Physical Therapy (ECF No. 70-22 at 2), were sued by a client who was injured after allegedly slipping at a swimming pool after a 2004

physical therapy session with Stone.  (ECF No. 6-9 at 3).  Gaspar Physical Therapy and Stone denied all of the allegations in the GIN054845 complaint.  In 2008, the parties signed an offer to compromise (ECF No. 1-3 at 8), wherein Gaspar Physical Therapy and Stone agreed to a waiver of any claim for costs they may have been able to recover from the plaintiff in exchange for plaintiff voluntarily dismissing the action.  (ECF No. 1-3 at 5).

## CONTENTIONS OF THE PARTIES

Plaintiffs contend that statements contained in the Defendant's mailer regarding Gaspar "compensating victims" were false and libelous, and caused both financial and reputational harms.  (ECF No. 1-2 at 15–18).  Plaintiffs bring claims for the same statements under a negligence theory.  Stone separately brings a claim for intentional infliction of emotional distress, alleging that Defendant's decision not to redact his name from the mailers caused him severe emotional distress.  *Id.* at 18–19.

Defendant contends that the statements in the mailers "arise from statements in campaign literature . . . for an important public office, which are protected activities" under the U.S. Constitution.  (ECF No. 6-1 at 12).  Defendant asserts Plaintiffs' claims therefore must be struck under California's anti-SLAPP statute.

## LEGAL STANDARD

Under California Code of Civil Procedure section 425.16(b)(1), "[a] cause of action against a person arising from any act of that person in furtherance of the person's right of petition or free speech under the United States Constitution or the California Constitution in connection with a public issue shall be subject to a special motion to strike, unless the court determines that the plaintiff has established that there is a probability that the plaintiff will prevail on the claim." Cal. Code Civ. Proc. § 425.16(b)(1); s*ee also Thomas v. Fry's Elecs., Inc.*, 400 F.3d 1206, 1206 (9th Cir. 2005) (explaining that California anti-SLAPP motions apply in federal court).  The California Supreme Court has implemented a two-step approach to a claim under section 425.16.  *Baral v. Schnitt*, 376 P.3d 604, 617 (Cal. 2016).  First, "the moving defendant bears the burden of identifying all allegations of protected activity, and the claims for relief supported by them."  *Id.*  The defendant must

demonstrate that "relief is sought based on allegations arising from activity protected by the statute." *Id.* If that standard is met, the second step applies—"the burden shifts to the plaintiff to demonstrate that each challenged claim based on protected activity is legally sufficient and factually substantiated." *Id.*

## DISCUSSION

### I. Plaintiff's Illegality Claim

Plaintiffs contend that the anti-SLAPP statute does not apply because Defendant's conduct was illegal as a matter of law. (ECF No. 70 at 14). Plaintiffs assert that Defendant's mailers violated California Penal Code section 115.2(a), which prohibits "publish[ing], or caus[ing] to be published, with actual knowledge and intent to deceive, any campaign advertisement containing false or fraudulent depictions, or false and fraudulent representations, of official public documents or purported official public documents." Defendant denies that his conduct was illegal and contends that that the anti-SLAPP statute is applicable to this matter. (ECF No 75 at 24–25).

In *Flatley v. Mauro*, the California Supreme Court held that "a defendant whose assertedly protected speech or petitioning activity was illegal as a matter of law, and therefore unprotected by constitutional guarantees of free speech and petition, cannot use the anti-SLAPP statute to strike the plaintiff's complaint." 139 P.3d 2, 5 (Cal. 2006). In *Flatley*, the court found that the defendant's communications with the plaintiff were "extreme," and that the anti-SLAPP statute was inapplicable because the defendant's actions constituted criminal extortion as a matter of law. 139 P.3d at 19, 24 n.16. In determining whether the defendant had violated a criminal statute, the *Flatley* court applied a "narrow," exacting test: "either the defendant concedes, or the evidence conclusively establishes, that the assertedly protected speech or petition activity was illegal as a matter of law." *Id.* at 15. *See also Cross v. Cooper*, 127 Cal. Rptr. 3d 903 (Cal. Ct. App. 2011) (applying the exception for illegal activity only in "rare cases in which there is uncontroverted and uncontested evidence that establishes the crime as a matter of law").

In this case, the evidence of Defendant's illegal activity is not uncontroverted. Defendant denies that the campaign mailers contained any false statements. (ECF No. 6-1 at 16). Even assuming *arguendo* that Defendant conceded the falsity of the statements in the campaign mailers, Plaintiffs' evidence of Defendant's mental state at the time he authorized the distribution of the mailers is insufficient at this juncture to "conclusively establish" that Defendant Roberts acted with actual knowledge and intent to deceive when he authorized the distribution of the campaign mailers. *See Flatley*, 139 P.3d at 15. Consequently, the Court finds that *Flatley*'s illegality exception does not apply.

## II.  Protected Activity

A defendant bringing an anti-SLAPP motion has the initial burden of presenting a prima facie case that the suit "arises from [an] act of [defendant] in furtherance of [defendant's] right of petition or free speech under the United States or California Constitution in connection with a public issue." *Wilcox v. Superior Court*, 33 Cal. Rptr. 2d at 452 (quoting Cal. Code Civ. Proc. § 425.16(b)). Under section 425.16, an act in furtherance of a person's right of petition or free speech includes a "written or oral statement or writing made in a place open to the public or a public forum in connection with an issue of public interest." § 425.16(e)(3).

Plaintiffs' claims arise from allegedly false statements made by Defendant in the context of a campaign for public office. The Court finds that Defendant has satisfied his burden of showing that Plaintiffs' claims "arise from" a protected activity under section 425.16(e). *See Rosenauer v. Scherer*, 105 Cal. Rptr. 2d 674, 683 (Cal. Ct. App. 2001) ("It is well settled that section 425.16 applies to actions arising from statements made in political campaigns by politicians and their supporters, including statements made in campaign literature.") (citation omitted).

## III.  Probability of Prevailing

Once the defendant has met the burden of showing that the relevant conduct arises from a protected activity, "the burden shifts to the plaintiff to demonstrate that each challenged claim based on protected activity is legally sufficient and factually

substantiated." *Baral*, 376 P.3d at 617. The plaintiff must make "a sufficient prima facie showing of facts to sustain a favorable judgment if the evidence submitted by the plaintiff is credited." *Wilcox*, 33 Cal. Rptr. 2d at 454. The determination is made on the basis of the "pleadings, and supporting and opposing affidavits stating the facts upon which the liabilities or defense[s] [are] based." Cal. Code Civ. Proc. § 425.16(b)(2). While a "plaintiff need not produce evidence that he or she can recover on every point urged," *Wilbanks v. Wolk*, 17 Cal. Rptr. 3d 497, 512 (Cal. Ct. App. 2004), pleadings alone are inadequate to demonstrate a prima facie case. The plaintiff must submit admissible evidence to show a probability of prevailing at trial. *Evans v. Unkow*, 45 Cal. Rptr. 2d 624, 629 (Cal. Ct. App. 1995). "[T]he plaintiff's burden of establishing a probability of prevailing is not high: We do not weigh credibility, nor do we evaluate the weight of the evidence. Instead, we accept as true all evidence favorable to the plaintiff and assess the defendant's evidence only to determine if it defeats the plaintiff's submission as a matter of law. Only a cause of action that lacks 'even minimal merit' constitutes a SLAPP." *Overstock.com, Inc. v. Gradient Analytics, Inc.*, 61 Cal. Rptr. 3d 29, 38 (Cal. Ct. App. 2007) (citations omitted).

### A. Defamation Claims

Plaintiffs Gaspar Physical Therapy and Stone each bring libel claims. To prevail on a defamation claim under California law, a plaintiff must prove (1) a publication that is (2) false, (3) defamatory, and (4) unprivileged, and that (5) has a natural tendency to injure or that causes special damage. *Taus v. Loftus*, 151 P.3d 1185, 1209 (Cal. 2007). If the plaintiff is a public figure, the U.S. Constitution also requires plaintiffs to prove actual malice before they can recover. *N.Y. Times v. Sullivan*, 376 U.S. 254, 279–80 (1964).

### 1. Publication

Plaintiffs contend that Defendant's distribution of the mailers satisfies the publication element of their defamation claims. Defendant does not contest that the mailers were distributed to households in San Diego, or that those who received the mailers understood the references to "Kristin Gaspar's company" to be references to Plaintiff

Gaspar Physical Therapy. (ECF No. 1-3 at 2, 3). Defendant also does not dispute that individuals receiving the mailers understood the reference on the mailers to "Brian Stone" to be references to Plaintiff Brian Stone. Defendant contends that although Stone's name appears on the mailers, the mailers merely reproduce a public record and "make no comment about Stone and are not of and concerning him." (ECF No. 6-1 at 23).

The publication element of a defamation claim requires a communication of the allegedly defamatory statement "to a third person who understands its defamatory meaning as applied to the plaintiff." *Shively v. Bozanich*, 80 P.3d 676, 683 (Cal. 2003).

The allegedly false statements on the mailers reference the "settle[ment of] a lawsuit" involving Stone. (ECF No. 1-3 at 2). Stone's name appears in the image on the mailers. The Court concludes that a third person reading the mailers would understand the defamatory meaning as applied to Stone. The Court finds both Plaintiffs have made a sufficient showing on this element of the claim.

## 2. Falsity

Plaintiffs contend that two specific factual statements in the mailers are demonstrable false. Defendant asserts that the mailers "do not contain [any] provably false statements of fact." (ECF No. 6-1 at 15).

A statement of fact is false if "it would have a different effect on the mind of the reader from that which the pleaded truth would have produced." *Masson v. New Yorker Magazine, Inc.*, 501 U.S. 496, 516 (1991) (citation omitted). The Supreme Court explained that "[t]he essence of [the falsity] inquiry . . . [is whether] the substance, the gist, the sting, of the libelous charge [is] justified." *Masson*, 501 U.S. at 517 (citing *Heuer v. Kee*, 59 P.2d 1063, 1064 (Cal. Ct. App. 1936)) (internal quotations omitted). Courts assess the statement from the perspective of the average reader. *Ferlauto v. Hamsher*, 88 Cal. Rptr. 2d 843, 851 (Cal. Ct. App. 1999) ("[W]hen analyzing the statements in question, courts do so from the perspective of the average reader, not a person trained in the technicalities of the law.").

In this case, Plaintiffs assert that the statement "KRISTIN GASPAR'S COMPANY SETTLED A LAWSUIT COMPENSATING VICTIMS WHO SUED FOR MALPRACTICE AND ELDER ABUSE" (ECF No. 1-3 at 2), is a demonstrably false statement of fact. (ECF No. 21, 24). Plaintiff Stone states in his declaration that he "refused to settle the case because [he and Gaspar Physical Therapy] did not want to pay the plaintiffs anything for a specious lawsuit" and "[n]o compensation was paid to the plaintiffs in [Case No. GIN054845]." (ECF No. 70-16, at 3–4). Defendant contends that the statement is not false because it "is not erroneous" to say that Gaspar Physical Therapy and Stone "compensated" the plaintiff in Case No. GIN054845. (ECF No. 6-1 at 16). Defendant asserts that Gaspar Physical Therapy and Stone "compensated" plaintiffs when they signed the offer to compromise because they "gave up a financial benefit to which [they] would have been entitled in the form of recoverable costs had [the plaintiffs] simply dismissed the case." *Id.* Plaintiffs respond that Defendant's argument "conflate[s] the concept of 'consideration' with 'compensation,'" and "[g]iving up the right to chase plaintiffs for negligible litigation costs . . . definitely does not constitute 'compensation' from [Gaspar Physical Therapy] or Dr. Stone." (ECF No. 70 at 20).

To determine falsity, the Court assesses the effect the allegedly false statements in Defendant's mailers would have on the average reader. *See Ferlauto*, 88 Cal. Rptr. 2d at 851. The first mailer used large, capitalized letters, stating "TOO IRRESPONSIBLE FOR SAN DIEGO," "[n]ow she's asking voters to trust her," "victims," and "a long history of shady business practices" (ECF No. 1-3 at 2). Consistent with common everyday usage of the term and the tone and tenor of the mailers, "compensation" would be interpreted by the average reader to mean money paid for causing injury to another. These phrases and font choices further implied that Gaspar Physical Therapy and Stone offered compensation to the plaintiffs in Case No. GIN054845 because the underlying elder abuse, negligence, and malpractice claims had merit—and Gaspar Physical Therapy and Stone were at fault. An

average reader of Defendant's mailers would have had a different mental impression had the mailers stated that Gaspar Physical Therapy agreed to a waiver of costs in exchange for dismissing a lawsuit without admitting fault. Accordingly, the Court finds that Plaintiffs have made a prima facie case that the Defendant's statement regarding "compensating victims" implies a false assertion of fact, which may be properly interpreted as a false statement.

### Statement two: "Kristin Gaspar . . . [o]perates a medical business known for malpractice, elder abuse, and negligence"

Plaintiffs contend that the statement "Kristin Gaspar . . . [o]perates a medical business known for malpractice, elder abuse, and negligence" is a false statement of fact. (ECF No. 70 at 22). Defendant contends that the statement "is a form of political rhetoric that is not provably false." (ECF No. 6-1 at 16).

Courts use a "totality of the circumstances" approach to determine "whether a reasonable fact finder could conclude the published statement declares or implies a provably false assertion of fact." *Overstock.com, Inc.*, 61 Cal. Rptr. 3d at 39–40 (citations omitted). "Broad, unfocused and wholly subjective comment[s]" are insufficient to be considered a statement of fact. *Copp v. Paxton*, 52 Cal. Rptr. 2d 831 (Cal. Ct. App. 1996). S*ee also Reed v. Gallagher*, 204 Cal. Rptr. 3d at 188 ("[R]hetorical hyperbole, vigorous epithet[s], lusty and imaginative expression[s] of contempt . . . and language used in a loose, figurative sense have all been accorded constitutional protection.") (internal citations and quotations omitted). Conversely, a statement couched as an opinion but impliedly supported by facts may be properly interpreted as a factual statement. *Milkovich v. Lorain Journal Co.*, 497 U.S. 1, 18–19 (1990) ("If a speaker says, 'In my opinion John Jones is a liar,' he implies a knowledge of facts which lead to the conclusion that Jones told an untruth. Even if the speaker states the facts upon which he bases his opinion, if those facts are either incorrect or incomplete, or if his assessment of them is erroneous, the statement may still imply a false assertion of fact. Simply couching such statements in terms of opinion does not dispel these implications . . . .").

In this case, a footnote after the statement "Kristin Gaspar . . . operates a medical business known for malpractice, elder abuse, and negligence" directs the reader to "CHECK THE FACTS" next to a corresponding reference to Case No. GIN054845. (ECF No. 1-3 at 2). Viewed in the context of the other statements and images on the mailer, particularly those claiming Plaintiffs "settled a lawsuit compensating victims," an average reader of Defendant's mailer would interpret the statement not as a mere subjective opinion incapable of being proven true or false. *Id.* Rather, the average reader would understand the footnote as implying that Case No. GIN054845 provides a factual underpinning for the statement that Plaintiffs are "known for" malpractice, elder abuse, and negligence because a legal adjudication has determined that Plaintiffs committed malpractice, elder abuse, and negligence. *See Milkovich*, 497 U.S. at 18–19. The Court finds that Plaintiffs have made a prima facie case that Defendant's statement that Gaspar Physical Therapy was "known for malpractice, elder abuse, and negligence" implies a false assertion of fact, which may be properly interpreted as a false statement.

### 3. Defamatory; Natural Tendency to Injure or Special Damages

Plaintiffs contend that Defendant's mailers defamed both Gaspar Physical Therapy and Stone. Defendant asserts that the mailers did not defame Stone because the only reference to Stone in the mailers is the inclusion of his name in the reproduction of the Case No. GIN054845 complaint, and "[t]he mailers do nothing more than accurately reproduce a portion of a public record." (ECF No. 6-1 at 23).

Libel, a form of defamation, "is a false and unprivileged publication by writing, printing, picture, effigy, or other fixed representation to the eye, which exposes any person to hatred, contempt, ridicule, or obloquy, or which causes him to be shunned or avoided, or which has a tendency to injure him in his occupation." Cal. Civ. Code § 45; *see also Barnes-Hind, Inc. v. Superior Court*, 226 Cal. Rptr. 354, 356 (Cal. Ct. App. 1986) ("A corporation can be libeled by statements which injure its business reputation."). "A statement that is defamatory without the need for explanatory matter such as an inducement, innuendo or other extrinsic fact, constitutes 'a libel on its face,'" or libel *per*

*se. Overstock.com, Inc.*, 61 Cal. Rptr. 3d at 39 (quoting Cal. Civ. Code § 45a). If a plaintiff adequately alleges and proves a libel *per se* claim, it is unnecessary to prove special damages; rather, damage to plaintiff's reputation is presumed. *See Barnes-Hind, Inc.*, 226 Cal. Rptr. at 356.

In this case, Plaintiffs Stone and Gaspar Physical Therapy contend that Defendant's mailer statements are libel *per se* because "[a] reasonable reader would understand that accusing a physical therapy company and physical therapist of being 'known for elder abuse, malpractice and negligence' is defamatory." (ECF No. 70 at 27). The Court finds that an average reader of Defendant's mailer would not need external aid to perceive the statements regarding Gaspar Physical Therapy and Brian Stone on the mailer as defamatory.[5] Accordingly, damage to Plaintiffs' reputation is presumed. *See DiGiorgio Fruit Corp. v. AFL-CIO*, 30 Cal. Rptr. 350, 356 (Cal. Ct. App. 1963) ("[I]f the publication reasonably and naturally has the effect of bringing the business of the corporation into public contempt, and of making it odious in the estimation of those with whom it has business dealing or connections, then the law will presume that the publication was actionable per se without either pleading [or] proof of special damage. It will be inferred that the publication did injure it in a business way, for it is only in a business way, resulting in pecuniary loss, that a corporation can be damaged by an alleged libelous publication.") (alteration in original) (quotation omitted). The Court finds Plaintiffs' prima facie showing sufficient on this element.

---

[5] Defendant argues that "[t]o associate Stone with Friedman's malpractice claim, the reader must independently know that Stone is employed at [Gaspar Physical Therapy] and/or was involved in treating Friedman," and the inference required to make the connection no longer makes the statement libelous on its face, or *per se*. (ECF No. 15 at 14). The image of the caption page of the complaint contained the words "Physical Therapist Brian Stone" immediately above the words "defendants," to the immediate left of the words "negligence," "medical malpractice," and "elder abuse," underneath the words "Kristin Gaspar's company broke her patient's trust" and on the reverse side of a page that said "Kristin Gaspar's Company Settled a Lawsuit Compensating Victims Who Sued For Malpractice And Elder Abuse." (ECF No. 1-3 at 2, 3). The Court finds that no inference was required for the average reader to understand the defamatory implication that Brian Stone was at fault in the lawsuit and compensated the "victim."

#### 4.      Privilege

The First Amendment provides a limited privilege for defamatory criticism of "public officials" and "public figures."  *Gertz v. Robert Welch, Inc.*, 418 U.S. 323 (1974). A public official or public figure may not recover damages on a defamation claim unless he or she is able to demonstrate with "clear and convincing proof that the defamatory falsehood was made with knowledge of its falsity or with reckless disregard for the truth." *Id.* at 342 (also known as "actual malice" or "*New York Times* malice").

### i.  Public vs. Private Figure Determination

Plaintiffs assert that Gaspar Physical Therapy and Brian Stone are private entities. Defendant contends that Kristin Gaspar's statements on the campaign trail regarding her business experience "invited attention and comment" on Gaspar Physical Therapy and converted Gaspar Physical Therapy into a "public figure" for the purposes of the 2016 election.[6]  (ECF No. 6-1 at 19).

Specifically, Defendant cites Kristin Gaspar's statements that,

- "[a]s [s]upervisor, she will bring real-world small business experience . . . to make government work for our families" (ECF No. 6-6 at 2);
- "[she] has been instrumental in growing the [physical therapy] practice to six offices from Oceanside to Solana Beach" (ECF No. 6-5 at 6);
- "[t]he success of the company has been related to service excellence" (ECF No. 6-5 at 3); and
- "as CFO and business manager, [she] touch[es] nearly every aspect of [the] business; budget and business plan development, bookkeeping, daily operations and human resources." (ECF No. 6-5 at 3).

Plaintiffs contend that Gaspar Physical Therapy is not a limited purpose public figure because "the quality of care provided by [Gaspar Physical Therapy] and Dr. Stone was not

---

[6] Defendant does not contend that Plaintiff Stone was a public figure.

a matter of public controversy," and "neither Gaspar Physical Therapy nor Dr. Stone tried to thrust themselves into the public eye or attempted to influence the outcome of the Supervisorial race." (ECF No. 70 at 29).

Public figure status is a question of law to be determined by the court. *Reader's Digest Assn. v. Superior Court*, 37 Cal. 3d 244, 252 (1984). Two types of public figures must show actual malice to bring defamation claims: (1) "all purpose" public figures, who "occupy positions of such persuasive power and influence that they are deemed public figures for all purposes," and (2) "limited purpose" public figures, who "voluntarily inject" themselves or are "drawn into a particular public controversy and thereby become[] . . . public figure[s] for a limited range of issues." *Gertz*, 418 U.S. at 345–51. The "public figure" determination is a case-by-case totality-of-the-circumstances test. *Reader's Digest Assn.*, 37 Cal. 3d at 255. The California Supreme Court has directed courts to "look for evidence of affirmative actions by which purported 'public figures' have thrust themselves into the forefront of particular public controversies." *Id.*

In this case, Kristin Gaspar, a co-owner of the business, made statements on the campaign trail tying "the success" of the company to her involvement with Gaspar Physical Therapy's day-to-day operations. (ECF No. 6-5 at 3). Kristin Gaspar's comments about the success of her business in the context of her campaign for public office "invit[ed] attention and comment" on the quality of the services rendered at Gaspar Physical Therapy. *See Gertz*, 418 U.S. at 345; *see also Makaeff v. Trump University, LLC*, 715 F.3d 254 (9th Cir. 2013) (holding that a corporation can become a limited purpose public figure when a public debate exists around the corporation's practices). Consequently, the Court finds that Gaspar Physical Therapy was a limited purpose public figure during the 2016 general election.

### a. Actual Malice

Plaintiffs contend that Defendant's conduct in approving the mailers was sufficiently reckless to constitute actual malice. Defendant contends that Plaintiffs cannot establish that Defendant acted with actual malice because Plaintiffs cannot show that Defendant

knew that the statements regarding "compensation" were false at the time the mailers were distributed.

The record shows that Defendant first learned about Case No. GIN054845 from an opposition research report compiled by a campaign consultant named Gregory Scanlon at Point Loma Strategic Research (the "PLSR report"). (ECF Nos. 70-13; 70-8 at 29–34, 39). The PLSR report written by Scanlon listed the causes of action in Case No. GIN054845. (ECF Nos. 70-13 at 7; 70-15; 70-8 at 34). Defendant stated in his deposition that the PLSR report did not discuss the disposition of Case No. GIN054845.[7] (ECF No. 70-8 at 34) ("Q: Okay. Did it have anything in it about how the lawsuits ended? A: No; Q: Just the fact that they had been filed? A: Yes.").

The campaign mailers were prepared by a third-party contractor named Doug Greven, whom Defendant hired to "handle his campaign's direct mail program." (ECF No. 75 at 4). On September 16, 2016, a meeting was held with Defendant and his campaign staff to discuss draft versions of the mailers prepared by Greven. *Id.* at 7–8. Scanlon and Greven dialed in to the meeting via telephone. (ECF No. 70-9 at 36). The meeting lasted approximately 30-45 minutes. (ECF No. 75 at 8, 19). During the meeting, Defendant reviewed and discussed drafts of the mailers with his campaign team. (ECF No. 75 at 8). Defendant then told Greven to "[g]ive [the mailers] more of a legal look." (ECF No. 70-9 at 23). Defendant stated in his deposition that the topic of the "settlement" in Case No. GIN054845 "did not come up" during the meeting. (ECF No. 70-9 at 36).

On September 21st and 22nd, 2016, Scanlon created and saved a document on his computer containing research he had performed on Gaspar for Defendant. (ECF No. 75 at

---

[7] Records show that on August 10, 2016, Scanlon reviewed the Case No. GIN054845 file at the courthouse. (ECF No. 70-3 at 36). Gregory S. Day states in his declaration that he reviewed the same file at the courthouse on October 25, 2016, and at the time he reviewed the file it contained the Acceptance, Dismissal, and "998 Offer," which offered to waive costs in exchange for a dismissal. (ECF No. 70-23 at 4).

20). In the document, Scanlon stated in apparent reference to Greven's drafts of the proposed mailers that,

> [t]he language in the first piece is generally fine, but 'forced to pay out significant damages for malpractice' is a bit much—they settled out of court without admitting any wrongdoing, so we don't know any further details on that.
> 'Accused,' 'sued for,' 'faced allegations of,' that kind of language should all be fine though. Rest of the backups below.
> The language on the fourth piece also goes a little overboard in some of the previously covered claims—
> 'forced to compensate former patients after committing significant malpractice'—same deal as the first one, they never were found to have committed it, just accused/sued for . . . .

(ECF No. 70-15 at 12).

On September 21, 2016, Greven sent a modified version of the first mailer to Defendant. In the modified version, the language had been changed from "Kristin Gaspar's Company Broke Her Patient's Trust And Was 'Forced To Pay Out Significant Damages For Malpractice'" to "Kristin Gaspar's Company Settled A Lawsuit Compensating Victims For Malpractice And Elder Abuse." (ECF No. 75 at 10). Greven concluded the email with the statement "[l]et me know if you have any issues with the piece or I missed any input from the phone." (ECF No. 75-8 at 42).

On October 18, 2016, four days after the first mailer stating Gaspar "SETTLED A LAWSUIT COMPENSATING VICTIMS" was distributed, a reporter contacted the Roberts campaign and informed them that "Kristin . . . is denying the allegation." (ECF No. 70-15 at 27). In an email, Greven relayed the reporter's inquiry to Defendant, and quoted a statement "[f]rom [r]esearch" stating that "[Gaspar Physical Therapy] settled out of court without admitting any wrongdoing." *Id.* In response, Roberts replied "[w]hat is the proof for this statement 'they settled out of court without admitting any wrongdoing?' I don't see any proof in the write up below so how do we know this? Dave[.]" *Id.* Greven sent an email replying "[i]ts why the case was dropped, because it was settled out of court. We have no clue of course what the settlement amount was for since it's not public record,

just that there was one." (ECF No. 70-14 at 30). Defendant distributed more than 210,000 mailers after October 18, 2016. (ECF Nos. 70 at 33; 75 at 12).

In order for a public figure alleging defamation to defeat an anti-SLAPP motion, the public figure "must establish a *probability* that he or she can produce . . . clear and convincing evidence" that the defendant published the defamatory statement with actual malice. *Manzari v. Associated Newspapers Ltd.*, 830 F.3d 881, 889 (9th Cir. 2016) (emphasis in original). A publisher publishes a defamatory statement with actual malice when the publisher has "knowledge that [the statement] was false or [publishes] with reckless disregard of whether [the statement] was false or not." *N.Y. Times Co.*, 376 U.S. at 279. Reckless conduct "is not measured by whether a reasonably prudent man would have published, or would have investigated before publishing. There must be sufficient evidence to permit the conclusion that the defendant in fact entertained serious doubts as to the truth of his publication." *Time, Inc. v. Pape*, 401 U.S. 279, 291–92 (1971). Once a publisher has reason to doubt the accuracy of a publication, the publisher "must act reasonably in dispelling it." *Masson v. New Yorker Magazine, Inc.*, 960 F.2d 896, 901 (9th Cir. 1992). The Supreme Court has further acknowledged that "reckless disregard" is "not readily captured in one fallible definition," *St. Amant v. Thompson*, 390 U.S. 727, 730 (1968) (internal quotations omitted), and must be determined on a case-by-case basis, *Bose Corp. v. Consumers Union of U.S., Inc.*, 466 U.S. 485, 503 (1984).

At this stage, the Court reviews Plaintiff's claims for "minimal . . . legal sufficiency and triability," *Manzari*, 830 F.3d at 887 (internal citations omitted) and must "accept as true all evidence favorable to the plaintiff and assess the defendant's evidence only to determine if it defeats the plaintiff's submission as a matter of law," *id.* (citing *Overstock.com*, 61 Cal Rptr. 3d at 38). In this case, Defendant testified that at the time he approved the mailers for distribution in mid-September, he believed that the terms of the settlement were "sealed," and that neither he, nor his campaign, had any information regarding the terms of the settlement in Case No. GIN054845. (ECF No. 75-13 at 34–41). Viewing the evidence in the light most favorable to the Plaintiff, the record is sufficient to

infer Defendant entertained serious doubt as to whether any statements the campaign made on the mailers regarding compensation to "victims" being included in the Case No. GIN054845 settlement would have been truthful.

Plaintiffs provided additional evidence showing that Defendant was aware that individuals on his campaign entertained doubts as to the veracity of the claim that Gaspar Physical Therapy was "forced to" compensate victims. A draft of the first mailer stated "Kristin Gaspar's Company Broke Her Patient's Trust And Was 'Forced To Pay Out Significant Damages For Malpractice.'" (ECF No. 75 at 10). After a phone conversation involving Roberts, Greven, and Scanlon, the language changed to "Kristin Gaspar's Company Settled A Lawsuit Compensating Victims For Malpractice And Elder Abuse." (ECF Nos. 75 at 10; 75-8 at 42). Defendant asserts that the terms of the Case No. GIN054845 settlement were not discussed on the September 16, 2016 call, but Scanlon's own notes, purportedly created five and six days after the call, cite the specific language used (and changed) in the first proposed mailer, and question the proposed mailer's accuracy. (ECF Nos. 70-15 at 12; 75 at 20) ("The language in the first piece is generally fine, but 'forced to pay out significant damages for malpractice' is a bit much—they settled out of court without admitting any wrongdoing, so we don't know any further details on that. 'Accused,' 'sued for,' 'faced allegations of,' that kind of language should all be fine though . . . ."). The Court does not assess or weigh the credibility of Defendant's denial that Scanlon's doubts about the accuracy of the language on the mailers were discussed on the call.[8] *See Manzari*, 830 F.3d at 887.

On October 18, 2016, Defendant was informed that Plaintiffs denied the allegations made by Defendant in the mailers. On the same day, Defendant was informed by Greven that his campaign's internal research stated that Case No. GIN054845 "settled out of court without admitting any wrongdoing" and "[w]e have no clue of course what the settlement

_____

[8] Plaintiffs have not yet deposed Scanlon or Greven. (ECF No. 70 at 17).

amount was for since it's not public record, just that there was one." (ECF No. 70-15 at 27, 31). Defendant had seen no court document or other public record indicating that compensation had been included in the Case No. GIN054845 settlement. At this point, the record supports the inference that Defendant knew his statements regarding "compensation" being included in the Case No. GIN054845 settlement were speculative, and under *Masson*, Defendant had a duty to act reasonably to dispel doubt as to the accuracy of the statements he made in the mailers. *See* 960 F.2d at 901.

Reviewing the totality of the facts and circumstances put forth by Plaintiffs, the Court finds that Plaintiff Gaspar Physical Therapy has demonstrated a probability that it can produce clear and convincing evidence at trial showing Defendant published the allegedly defamatory statements with actual malice or reckless disregard as to the statements' truth or falsity.[9] *See Governor Gray Davis Comm. v. Am. Taxpayers All.*, 125 Cal. Rptr. 2d 534, 540 (Cal. Ct. App. 2002) ("Only a cause of action that satisfies *both* prongs of the anti-SLAPP statute—i.e., that arises from protected speech or petitioning *and* lacks even minimal merit—is a SLAPP, subject to being stricken under the statute.") (emphasis in original).

### ii. Privilege With Regard to Brian Stone's Defamation Claim

Defendant contends that regardless of whether Plaintiff Stone is a limited public figure or private person "there is California precedent supporting application of the *New York Times* malice standard to all political statements." (ECF No. 6-1 at 23). Assuming Defendant's position *arguendo*, the Court finds, for the reasons cited regarding Plaintiff

---

[9] On December 15, 2017 Defendant filed objections to declarations submitted in support of Plaintiffs' Ex Parte Application to Stay Defendant's Motion to Strike and Allow Plaintiffs to Conduct Discovery. (ECF No. 15-2). On August 20, 2018, Plaintiffs filed evidentiary objections requesting the Court strike paragraphs 6 and 12 of the Declaration of Dave Roberts. (ECF No. 70-25). The Court's findings in this Order do not rely on the statements cited in Defendant's objections. The Court denies Defendant's objections as moot. The Court's findings in this Order also do not depend on whether or not Defendant's efforts in stopping publication would have been futile in the time period between when Plaintiffs' C&D letter arrived on October 24, 2016 and when Defendant's last mailer was distributed on October 25, 2016. The Court denies Plaintiff's objections at this time as moot.

Gaspar Physical Therapy in Section III(A)(4)(i)(a) above, that Plaintiff Stone has demonstrated a probability that he can produce clear and convincing evidence at trial that Defendant published the allegedly defamatory statements at issue with actual malice or reckless disregard as to the statements' truth or falsity.

### B. Brian Stone's IIED Claim

Plaintiff Stone bases his intentional infliction of emotional distress ("IIED") claim on the same allegations made in his defamation claim. Defendant contends that Plaintiff Stone's IIED claim is barred by the Supreme Court's holding in *Snyder v. Phelps*, which held that the First Amendment bars a plaintiff from bringing an IIED claim when the speech at issue pertains to a matter of public concern. 562 U.S. 443 (2011).

Under California law, the elements of a cause of action for IIED are "(1) extreme and outrageous conduct by the defendant with the intention of causing, or reckless disregard of the probability of causing, emotional distress, (2) the plaintiff's suffering severe or extreme emotional distress, and (3) actual and proximate causation of the emotional distress by the defendant's outrageous conduct." *Hughes v. Pair*, 46 Cal. 4th 1035, 1050 (2009). The conduct at issue must be so extreme and outrageous "as to exceed all bounds of that usually tolerated in a civilized community." *Id.* (internal citation omitted). Normally, the defendant's outrageous conduct must be directed at the plaintiff, except when the defendant is aware of, but acts in reckless disregard of, the probability that the conduct will cause severe emotional distress to the plaintiff. *Christensen v. Superior Court*, 820 P.2d 181, 202 (Cal. 1991).

In this case, Plaintiff Stone provided declarations that "the mailers made the entirely false statement that the case was settled by 'compensating victims who sued for malpractice and elder abuse'" and that as a result of Defendant not redacting his name on the campaign mailers, he suffered "unbelievable" stress, "lost sleep almost every night" and "was embarrassed and appalled every time someone mentioned [the mailer] to me." (ECF No. 70-16 at 2–8). There is no dispute that Defendant distributed the mailers that allegedly caused the harm to Plaintiff Stone. The Court finds Plaintiff Stone has made a prima facie

showing that distributing a false statement implying fault and compensation paid to victims in a lawsuit to more than one hundred thousand San Diego residents, as alleged in the Complaint, could constitute an outrageous activity. (ECF No. 1-2 at 18–19).

Defendant contends that Plaintiff Stone cannot recover "[e]ven if Stone can prove the elements of his IIED claim" because *Snyder* "bars an IIED claim arising from speech dealing with matters of public concern." (ECF No. 6-1 at 24). Under *Snyder*'s "narrow" opinion "limited . . . [to] the particular facts before [the Court]", the Supreme Court held that the First Amendment protects a defendant against an IIED claim when the speech at issue pertains to a matter of public concern. 562 U.S. at 451, 460. While the Court noted that "the boundaries of the public concern test are not well defined," it stated that "[s]peech deals with matters of public concern when it can be fairly considered as relating to any matter of political, social, or other concern to the community." *Id.* at 453. A court determining whether speech concerns a matter of public concern is "to 'make an independent examination of the whole record'" *Bose Corp.*, 466 U.S. at 499 (quoting *New York Times Co.*, 376 U.S. at 284–86), and in "considering content, form, and context, no factor is dispositive[,]" the court must "evaluate all the circumstances of the speech, including what was said, where it was said, and how it was said," *Snyder*, 562 U.S. at 454.

To illustrate the distinction between a matter of public concern and a matter of private concern, *Snyder* juxtaposed the picketing of a soldier's funeral by the Westboro Baptist Church with the dissemination of information about a particular individual's credit report. *Id.* at 453. In *Snyder*, the Westboro Baptist Church held signs protesting "the United States' tolerance of homosexuality [and the] supposed evils of the Catholic Church" on public property near the funeral. *Id.* at 455. The Court found that the content of Westboro's signs "plainly relate[d] to broad issues of interest to society at large, rather than matters of 'purely private concern.'" *Id.* at 454. In *Dun & Bradstreet, Inc. v. Greenmoss Builders, Inc.*, the Court found that an individual's credit report "concerns no public issue" because it "was speech solely in the individual interest of the speaker and its specific business audience." 472 U.S. 749, 762 (1985).

In this case, Defendant asserts that "[t]he Roberts mailers related to an election for an important public office, and dealt with a matter of public concern." (ECF No. 6-1 at 24). An election for office is a matter of public concern. However, the Court finds a distinction can be drawn between Gaspar Physical Therapy and Brian Stone: Stone had "no involvement in Kristin Gaspar's campaign" (ECF No. 70-16 at 4), and Kristin Gaspar did not discuss Stone on the campaign trail. While Kristin Gaspar's comments regarding her involvement with Gaspar Physical Therapy fairly invited public attention and comment on Gaspar Physical Therapy's business practices, as discussed above, the same cannot be said for Stone. Stone's involvement in Case No. GIN054845 was not a matter of public concern, and consequently *Snyder* poses no obstacle to Stone's IIED claim. *See Time, Inc. v. Firestone*, 424 U.S. 448, 455–56 (1976) (finding defendant in divorce proceeding was not involved in a "public controversy" merely because of involvement in a public judicial proceeding). The Court finds that Stone has shown a probability of prevailing on his IIED claim.

### C.     Gaspar Physical Therapy's Negligence Claim

Plaintiff Gaspar Physical Therapy bases its negligence claim on the same allegations made in its defamation claim. As discussed in Section III(A)(4)(i) above, Gaspar Physical Therapy was a limited purpose public figure for the purposes of the 2016 general election. When the plaintiff is a public figure, the First Amendment bars recovery in tort for injuries caused by defamatory statements absent a showing of actual malice. *New York Times Co.*, 376 U.S. at 280; *see also Snyder*, 562 U.S. at 451 ("The Free Speech Clause of the First Amendment . . . can serve as a defense in state tort suits[.]"). Gaspar Physical Therapy cannot recover on a freestanding negligence action because the burden of proof for a public figure is actual malice, not negligence. Consequently, Plaintiff Gaspar Physical Therapy has not demonstrated a probability that it can succeed on the negligence claim.

### D.     Brian Stone's Negligence Claim

Plaintiff Stone bases his negligence claim on substantially the same allegations made in the defamation claim. In a common law negligence action, a plaintiff must prove (1)

duty, (2) breach, (3) causation, and (4) damages. *Rossetta v. CitiMortgage*, Inc., 227 Cal. Rptr. 3d 598, 605 (Cal. Ct. App. 2017). For the purposes of the Anti-SLAPP Motion at issue here, Plaintiff Stone has demonstrated a probability of showing actual malice at trial—a higher hurdle than negligence. *See* Section III(A)(4)(ii) *supra*; s*ee also Khawar v. Globe Intern., Inc.* 965 P.2d 696, 712 (Cal. 1998) ("Because actual malice is a higher fault standard than negligence, a finding of actual malice generally includes a finding of negligence, and evidence that is sufficient to support a finding of actual malice is usually, and perhaps invariably, sufficient also to support a finding of negligence."). Consequently, the Court finds that Plaintiff Stone has shown a probability of prevailing on his negligence claim.

## IV. Fees

"[A] prevailing defendant on a special motion to strike shall be entitled to recover his or her attorney's fees and costs." Cal. Code Civ. Proc. § 425.15(c). "The Court has broad discretion in determining the reasonable amount of attorney fees and costs to award to a prevailing defendant." *Metabolife Intern., Inc. v. Wornick*, 213 F. Supp. 2d 1220, 1222 (S.D. Cal. 2002). The fee award must be supported by "substantial evidence." *Id.* "[I]n the context of awarding attorney fees and costs," "the statute 'shall be construed broadly.'" *Id.* at 1224.

Defendant's motion to strike fails on the defamation, intentional infliction of emotional distress, and one of the negligence claims. Defendant is awarded no fees. Plaintiffs request fees for "defending this frivolous motion." (ECF No. 70 at 45). The Court finds that Defendant's Anti-Slapp Motion was not frivolous. Plaintiffs are awarded no fees.

///

///

///

///

///

## V. Conclusion

Defendant's motion to strike pursuant to California Civil Code section 425.16 (ECF No. 6) is granted in part and denied in part. The parties' requests for attorneys' fees are denied.

IT IS HEREBY ORDERED that the motion to strike is GRANTED as to Plaintiff Gaspar Physical Therapy's negligence claim, and DENIED in all other respects. Plaintiff Gaspar Physical Therapy's defamation claim remains. Plaintiff Stone's defamation, intentional infliction of emotional distress, and negligence claims remain.

Dated: October 29, 2018

*William Q. Hayes*
Hon. William Q. Hayes
United States District Court

17cv2051-WQH-JLB